IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID PATRICK VICE, | § | |
| | § | |
| Movant, | § | |
| | § | |
| V. | § | No. 3:16-cv-1757-L-BN |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Movant David Patrick Vice, a federal prisoner, filed, through counsel, a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. His action was referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay. The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should deny the Section 2255 motion.

**Applicable Background**

After pleading guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), the Court, on June 18, 2014, sentenced Vice to 216 months of imprisonment. *See United States v. Vice*, No. 3:13-cr-394-P (01), Dkt. No. 33. The Court enhanced his sentence under 18 U.S.C. § 924(e), based on Vice's previous Texas convictions for burglary of a habitation (two), attempted burglary of a habitation (two), and escape. *See Vice*, No. 3:13-cr-394-P (01), Dkt. No. 28-1 (presentence report ("PSR") attached to which are indictments, judgments, and judicial confessions applicable to

these state convictions, *see id.* at 23-34); *see also Shepard v. United States*, 544 U.S. 13 (2005)). And the Court ordered that his sentence run concurrently with a then-pending attempted burglary of a habitation case against him in state court. *See Vice*, No. 3:13-cr-394-P, Dkt. No. 33. Vice did not appeal. But, in June 2016, the Court, under 18 U.S.C. § 3006A, appointed the Federal Public Defender for this district to represent Vice in the collateral attack of his sentence under *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015). *See Vice*, No. 3:13-cr-394-L, Dkt. Nos. 37 & 38.

## Legal Standards

As the United States Supreme Court recounted in *Samuel Johnson*,

> [f]ederal law forbids certain people – such as convicted felons, persons committed to mental institutions, and drug users – to ship, possess, and receive firearms. § 922(g). In general, the law punishes violation of this ban by up to 10 years' imprisonment. § 924(a)(2). But if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony," the [ACCA] increases his prison term to a minimum of 15 years and a maximum of life. § 924(e)(1); *[Curtis] Johnson v. United States*, 559 U.S. 133, 136 (2010). The Act defines "violent felony" as follows:
>> "any crime punishable by imprisonment for a term exceeding one year ... that –
>> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>> "(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" § 924(e)(2)(B) (emphasis added).
>
> The closing words of this definition, italicized above, have come to be known as the Act's residual clause.

135 S. Ct. at 2555-56.

In *Samuel Johnson*, the Supreme Court held "that imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee

of due process." *Id.* at 2563. The decision thus "affected the reach of the [ACCA] rather than the judicial procedures by which the statute is applied" and therefore is "a substantive decision and so has retroactive effect under *Teague[ v. Lane*, 489 U.S. 288 (1989),] in cases on collateral review," *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016). But it did "not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Samuel Johnson*, 135 S. Ct. at 2563.

Therefore, after *Samuel Johnson*, "[a] violent felony is one of a number of enumerated offenses or a felony that 'has an element the use, attempted use, or threatened use of physical force against the person of another.'" *United States v. Moore*, 711 F. App'x 757, 759 (5th Cir. 2017) (per curiam) (quoting 18 U.S.C. § 924(e)(2)(B)); *see, e.g., United States v. Lerma*, 877 F.3d 628, 630 (5th Cir. 2017) ("The government concedes that Lerma's sentence could not have constitutionally rested upon the residual clause in light of *[Samuel] Johnson* and *Welch*" and that "Lerma's prior convictions were not for any of the four enumerated offenses listed in § 924(e)(2)(B)(ii). The only question then is whether Lerma's sentence can be sustained pursuant to the ACCA's force clause. That is, does the crime under the Texas aggravated robbery statute for which Lerma was previously convicted at least three times 'ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another'?" (quoting Section 924(e)(2)(B)(i))).

Relief under Section 2255 is limited to a claim "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). So a *Samuel Johnson* claim under Section 2255 requires a movant to show that his constitutional right to due process was violated – or that he was sentenced in excess of the maximum authorized by law (for example, that he received a minimum sentence of 15 years under Section 924(e), as opposed to a maximum sentence of 10 years under Section 924(a)(2)) – because he was sentenced under the ACCA's residual clause.

The Fifth Circuit, "join[ing] the majority of [its] sister circuits," has held that a court "must look to the law at the time of sentencing to determine whether a sentence was imposed" in violation of *Samuel Johnson* – that is, it was imposed under the ACCA's residual clause, as opposed to its enumerated offense clause or its force clause. *United States v. Wiese*, 896 F.3d 720, 724 (5th Cir. 2018) (collecting cases).

Generally speaking, a movant "has a burden of sustaining" a contention that he was sentenced in violation of *Samuel Johnson* – like any other contention in a Section 2255 motion – "by a preponderance of the evidence," *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)) – that is, "evidence by fifty-one percent, or to the extent of more likely than not," *United States v. Diaz*, 344 F. App'x 36, 43 (5th Cir. 2009) (per curiam) (citation, brackets, and internal quotation marks omitted); *see also Coon v. United States*, 441 F.2d 279, 280 (5th Cir. 1971) ("A movant in a collateral attack upon a judgment has the burden to allege and prove facts which would entitle him to relief."); *United States v.*

*Ellis*, Crim. No. 13-286, 2018 WL 1005886, at *2 (E.D. La. Feb. 21, 2018) ("Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence." (citing *Wright*, 624 F.2d at 558)).

> The Fifth Circuit – again "sid[ing] with the majority of circuits" – recently held
>
> that a prisoner seeking the district court's authorization to file a successive § 2255 petition raising a *[Samuel] Johnson* claim must show that it was more likely than not that he was sentenced under the residual clause. This standard best "comports with the general civil standard for review and with the stringent and limited approach of [the Antiterrorism and Effective Death Penalty Act] to successive habeas applications."

*United States v. Clay*, 921 F.3d 550, 559 (5th Cir. 2019) (quoting *Wiese*, 896 F.3d at 724; citing *Wright*, 624 F.2d at 558).

And some circuits have already explicitly expanded application of this preponderance standard to initial Section 2255 motions. *See, e.g., United States v. Driscoll*, 892 F.3d 1127, 1135 (10th Cir. 2018) ("In United States v. Washington, 890 F.3d 891, 896 (10th Cir. 2018), we adopted *Beeman*'s articulation of a § 2255 movant's burden in a slightly different context. We now further adopt *Beeman[ v. United States*, 871 F.3d 1215 (11th Cir. 2017)]'s 'more likely than not' burden of proof here, at the merits stage of a first § 2255 challenge. Consequently, Driscoll must prove that the sentencing court, more likely than not, relied on the residual clause to enhance his sentence under the ACCA. Driscoll meets this burden. The sentencing record is ambiguous as to whether the sentencing court relied on the residual clause to enhance Driscoll's sentence, which favors neither Driscoll nor the government. But, after a review of the relevant background legal environment, we conclude that the sentencing

court must have relied on the residual clause, as any reliance on the enumerated offenses clause would have violated *Taylor[ v. United States*, 495 U.S. 575 (1990)]. Thus, Driscoll has adequately shown it is more likely than not that the sentencing court relied on the residual clause to enhance his sentence." (footnote omitted)); *Garcia-Hernandez v. United States*, 915 F.3d 558, 560 (8th Cir. 2019) ("*Walker*'s principles govern here, at the merits stage of an initial 2255 motion. Garcia-Hernandez must 'show by a preponderance of the evidence that the residual clause led the sentencing court to apply the ACCA enhancement.'" (quoting *Walker v. United States*, 900 F.3d 1012, 1015 (8th Cir. 2018))).[1]

But a true *Samuel Johnson* claim alone does not entitle its movant to relief. Instead, that sentencing error, on collateral review, only entitles a movant to relief if the error "'had substantial and injurious effect or influence in determining' [the movant's] sentence." *Driscoll*, 892 F.3d at 1132 (quoting *Brecht v. Abrahamson*, 507

---

[1] *See also Guzman v. United States*, Nos. 3:16-cv-2898-N-BK & 3:11-cr-13-N (01), 2019 WL 2719397, at *2 (N.D. Tex. May 21, 2019) ("Every circuit to address the question[ – whether the sentencing court relied on the residual clause in making its sentencing determination – ]in the context of an initial, timely Section 2255 motion has required a similar *[Samuel] Johnson*-error showing." (collecting cases)), *rec. accepted*, 2019 WL 3081631 (N.D. Tex. July 15, 2019); *cf. Cooks v. United States*, No. 3:16-cv-1773-G-BN, 2019 WL 1793011, at *8 (N.D. Tex. Mar. 22, 2019) ("[R]egardless whether the Court is addressing its jurisdiction to consider the merits of a successive motion, an affirmative defense to a motion (such as limitations under 28 U.S.C. § 2255(f)), or the merits of the motion[,] at the outset, the Court must determine whether the right recognized in *Samuel Johnson* truly is at issue – that is, whether the violent felony at issue qualified as a predicate conviction toward the movant's ACCA sentencing enhancement under the now-invalidated residual clause."), *rec. adopted*, 2019 WL 1789904 (N.D. Tex. Apr. 24, 2019).

U.S. 619, 638 (1993)); *see, e.g., id.* ("First, we determine whether the sentencing court erred by relying on the residual clause to enhance Driscoll's sentence. Second, if the sentencing court erred, we determine whether that error 'had substantial and injurious effect or influence in determining' Driscoll's sentence." (citation omitted); *Hrobowski v. United States*, 904 F.3d 566, 569 (7th Cir. 2018) ("[A] prisoner who was sentenced under the unconstitutional residual clause can move to vacate his sentence, as long as the error affected his sentence." (citation omitted)); *see also United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht* in a Section 2255 proceeding).

Under *Brecht*, "certain 'structural' errors," *Ellis*, 2018 WL 1005886, at *2 (quoting *Brecht*, 507 U.S. at 629-30) – defined as "defects in the constitution of the trial mechanism," such as "deprivation of the right to counsel," *Brecht*, at 629 – entitle a movant to automatic relief "once the error is proved. For other 'trial' errors, the court may grant relief only if the error 'had substantial and injurious effect or influence' in determining the outcome of the case." *Ellis*, 2018 WL 1005886, at *2 (citing *Brecht*, 507 U.S. at 629-30; then quoting *id.* at 637-38). So, even if there is true *Samuel Johnson* sentencing error, if a movant "has three predicate convictions to support his enhanced sentence as an armed career criminal under the ACCA," he is not entitled to relief. *Driscoll*, 892 F.3d at 1135-36; *see also Chavez*, 193 F.3d at 379 ("Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.").

At this stage, the Court considers the impact of applicable statutory-

interpretation decisions handed down after a movant's sentencing, such as *Mathis v. United States*, 136 S. Ct. 2243 (2016). *See, e.g.*, *United States v. Lewis*, 904 F.3d 867, 873 (10th Cir. 2018) ("*Mathis* and other current, post-sentence cases are only applicable at the harmless error stage of review, once the movant has established the existence of *[Samuel] Johnson* error."); *accord Driscoll*, 892 F.3d at 1136-37; *see also Van Cannon v. United States*, 890 F.3d 656, 661-62 (7th Cir. 2018) (where "[t]he government confessed the *[Samuel] Johnson* error," "[t]he only remaining dispute concerned the question of prejudice," and during that dispute, a movant is "entitled to show that under current caselaw, one or more of [his] remaining predicates could not be counted" (citation omitted)).

And the precise question at this stage is: "'Would a sentencing judge, applying current law, determine that the movant's conviction(s) still qualifies as a crime of violence under one or both of the still-valid ACCA clauses and resentence him to the same length of imprisonment?' If the answer is yes, [a court] consider[s] the error harmless." *United States v. Copeland*, 921 F.3d 1233, 1252 (10th Cir. 2019) (quoting *Lewis*, 904 F.3d at 873; original brackets omitted).

## Analysis

Relief for Vice turns on the Court finding that, when he was sentenced in June 2014, the Court classified his previous Texas convictions for burglary and attempted burglary as ACCA predicates under the Act's residual clause. This requires the Court concluding that Texas burglary was not then considered equivalent to generic burglary, and so the convictions did not qualify as "burglary" convictions enumerated in Section

924(e)(2)(B)(ii). And there may be support for this conclusion – if the Court accepts that, at the time of sentencing, the divisibility of the Texas burglary statute was on "the sentencing court's radar in this case." *Wiese*, 896 F.3d at 725.

As a panel of the Fifth Circuit explained in *Wiese*,

> in 2003, when Wiese was convicted of being a felon in possession, all of § 30.02(a) was considered generic burglary under the enumerated offenses clause of ACCA. *See United States v. Silva*, 957 F.2d 157, 162 (5th Cir. 1992); *see also United States v. Stone*, 72 F. App'x 149, 150 (5th Cir. 2003) (per curiam) (citing *Silva*, 957 F.2d at 161-62). That we held five years later that § 30.02(a)(3) is not generic burglary, *United States v. Constante*, 544 F.3d 584, 587 (5th Cir. 2008) (per curiam), or that we held earlier this year that § 30.02(a) is indivisible, *[United States v. Herrold*, 883 F.3d 517, 529 (5th Cir. 2018) (en banc)], is of no consequence to determining the mindset of a sentencing judge in 2003. Indeed, *Herrold*'s state law analysis that undergirded the divisibility determination was largely based upon a Texas Court of Appeals case decided five years after the sentencing in this case. *See Herrold*, 883 F.3d at 523, 525 (citing *Martinez v. State*, 269 S.W.3d 777 (Tex. App. – Austin 2008, no pet.)). Thus, at the time of sentencing, there was absolutely nothing to put the residual clause on the sentencing court's radar in this case.

*Id.*; *see also United States v. Hernandez*, ___ F. App'x ____, No. 16-11150, 2019 WL 2570906, at *3 (5th Cir. June 21, 2019) (per curiam) ("[T]he demonstrated trend before *Constante* was to treat all of Texas Penal Code § 30.02(a) as generic burglary." (footnote omitted)).

In June 2014, by contrast, *Constante* and *Martinez* were part of the legal landscape. But the en banc decision in *Herrold* – which the Supreme Court recently vacated, remanding for further consideration in light of *Quarles v. United States*, 139 S. Ct. 1872 (2019), *see United States v. Herrold*, ___ S. Ct. ____, No. 17-1445, 2019 WL 2493911 (June 17, 2019) – was not.

-9-

A panel of the Fifth Circuit in *Constante* "definitively [ ] conclude[d] that a burglary conviction under § 30.02(a)(3) of the Texas Penal Code is not a generic burglary under the *[Taylor v. United States*, 495 U.S. 575 (1990),] definition because it does not contain an element of intent to commit a felony, theft, or assault at the moment of entry. Therefore, [such] burglary convictions are not violent felonies under 18 U.S.C. § 924(e)." 544 F.3d at 587; *cf. United States v. Stitt*, 139 S. Ct. 399, 405-06 (2018) (In *Taylor*, the Supreme Court "concluded that the Act's term 'burglary' must include 'ordinary,' 'run-of-the-mill' burglaries as well as aggravated ones" and "defined the elements of generic 'burglary' as 'an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.'" (quoting *Taylor*, 495 U.S. at 597, 598)).

But the relevancy of *Constante* may not have been on the sentencing judge's radar here because the *Shepard* documents attached to Vice's PSR reflect that, as to three of his burglary or attempted burglary convictions, he entered each habitation with the intent to commit theft. *See* Dkt. No. 28-1 at 24, 27, & 28; *see also Wiese*, 896 F.3d at 725 (noting that, "[i]n determining potential reliance on the residual clause by the sentencing court," a reviewing court "may look to (1) the sentencing record for direct evidence of a sentence, and (2) the relevant background legal environment that existed at the time of the defendant's sentencing and the [PSR] and other relevant materials before the district court" (citations, internal quotation marks, and brackets omitted)).

That said, even if the Court assumes that Vice has shown by a preponderance

of the evidence that he has made a claim under *Samuel Johnson* by demonstrating that it is more likely than not that the sentencing court enhanced his sentence under the ACCA by relying on the Act's residual clause to classify his Texas burglary and attempted burglary convictions as violent felonies, Vice still cannot establish a *Samuel Johnson* violation because he cannot demonstrate prejudice under *Brecht*.

At the prejudice stage, the Court turns "to current caselaw" to determine if Vice still has three ACCA predicates. *Van Cannon*, 890 F.3d at 662; *see Garcia-Hernandez*, 915 F.3d at 560 ("Garcia-Hernandez has at least three qualifying convictions under current law. Resentencing would not change his ACCA enhancement, so any *[Samuel] Johnson* error was harmless." (citations omitted)); *see also Welch*, 136 S. Ct. at 1268 ("It may well be that the Court of Appeals on remand will determine on other grounds that the District Court was correct to deny Welch's motion to amend his sentence. For instance, the parties continue to dispute whether Welch's strong-arm robbery conviction qualifies as a violent felony under the elements clause of the Act, which would make Welch eligible for a 15-year sentence regardless of *[Samuel] Johnson*.").

The current caselaw includes two cases examining ACCA-enumerated burglary from this Supreme Court term – *Stitt* and *Quarles*. Neither assists an attempt to classify Texas burglary as non-generic burglary.

In the first, *Stitt*, the Supreme Court affirmed that a state burglary statute's "coverage of vehicles designed or adapted for overnight use" does not take that "statute outside the generic burglary definition." 139 S. Ct. at 407; *see id.* at 405 (noting its holding in *Taylor* that a "uniform definition" for burglary under the ACCA "includes

'at least the "classic" common-law definition,' namely, breaking and entering a dwelling at night with intent to commit a felony," but that definition, "by excluding all places other than dwellings ... has 'little relevance to modern law enforcement concerns.' Perhaps for that reason, by the time the [ACCA] was passed in 1986, most States had expanded the meaning of burglary to include 'structures other than dwellings.'" (citations omitted)); *id.* at 406 ("[W]e made clear in *Taylor* that Congress intended the definition of 'burglary' to reflect 'the generic sense in which the term was used in the criminal codes of most States' at the time the [ACCA] was passed. In 1986, a majority of state burglary statutes covered vehicles adapted or customarily used for lodging – either explicitly or by defining 'building' or 'structure' to include those vehicles." (citations and original brackets omitted)); *see also id.* at 406 (noting that, as the Supreme Court previously said in *Taylor*, "Congress ... viewed burglary as an inherently dangerous crime because burglary 'creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate'" (quoting *Taylor*, 495 U.S. at 588)).

And, in *Quarles*, the Supreme Court effectively reversed *Constante*:

The Armed Career Criminal Act does not define the term "burglary." In *Taylor*, the Court explained that "Congress did not wish to specify an exact formulation that an offense must meet in order to count as 'burglary' for enhancement purposes." *Id.* at 599. And the Court recognized that the definitions of burglary "vary" among the States. *Id.* at 598. The *Taylor* Court therefore interpreted the generic term "burglary" in § 924(e) in light of: the ordinary understanding of burglary as of 1986; the States' laws at that time; Congress' recognition of the dangers of burglary; and Congress' stated objective of imposing increased punishment on armed career criminals who had committed prior burglaries. Looking at those sources, the *Taylor* Court interpreted generic

-12-

> burglary under § 924(e) to encompass remaining-in burglary. Looking at those same sources, we interpret remaining-in burglary under § 924(e) to occur when the defendant forms the intent to commit a crime at any time while unlawfully present in a building or structure.

*Quarles*, 139 S. Ct. at 1879; *see also id.* (after repeating the point made in *Taylor* (and restated in *Stitt*) – that burglary is inherently dangerous because of the dangerous-confrontation possibility – observing that "[t]he dangers of remaining-in burglary are not tied to the esoteric question of precisely when the defendant forms the intent to commit a crime. That point underscores that Congress, when enacting § 924(e) in 1986, would not have understood the meaning of burglary to hinge on exactly when the defendant forms the intent to commit a crime while unlawfully present in a building or structure.").

These cases therefore appear to reset the interpretation of Texas's burglary statute – returning courts to "the demonstrated trend before *Constante*" – that "all of Texas Penal Code § 30.02(a) [should be treated] as generic burglary." *Hernandez*, 2019 WL 2570906, at *3. Accordingly, Vice cannot demonstrate prejudice. And he has therefore not shown that any *Samuel Johnson* sentencing error has resulted in prejudice by showing that there are no longer three predicate convictions for a violent felony under either the ACCA's enumerated offenses clause or its force clause.

## Recommendation

The Court deny Movant David Patrick Vice's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

A copy of these findings, conclusions, and recommendation shall be served on all

parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 22, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE